# Exhibit A

(Immediately Follows This Page)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014031400703001001E95E9

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 41**

| | | |
|---|---|---|
| Document ID: 2014031400703001 | Document Date: 03-13-2014 | Preparation Date: 03-14-2014 |
| Document Type: MORTGAGE | | |
| Document Page Count: 40 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST CHOICE SETTLEMENT LLC. FCS16857-NY | FIRST CHOICE SETTLEMENT LLC. FCS16857-NY |
| 510 BROADHOLLOW ROAD | 510 BROADHOLLOW ROAD |
| SUITE 308 | SUITE 308 |
| MELVILLE, NY 11747 | MELVILLE, NY 11747 |
| 631-393-2650 | 631-393-2650 |
| IABATZIDIS@FCSETTLE.COM | IABATZIDIS@FCSETTLE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3805 | 1 | Entire Lot | 2008 WESTCHESTER AVENUE |

Property Type: COMMERCIAL REAL ESTATE

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year____ Reel____ Page____ or File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| AL IMAN PLAZA, LLC | WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC |
| 2008 WESTCHESTER AVENUE | A DELAWARE LLC, 225 ASYLUM STREET |
| BRONX, NY 10462 | HARTFORD, CT 06103 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,675,000.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 1,675,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ 0.00 |
| TAXES: County (Basic): | $ | 8,375.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 18,843.75 | | $ 0.00 |
| Spec (Additional): | $ | 4,187.50 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 5,025.00 | | |
| NYCTA: | $ | 10,468.75 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 46,900.00 | | |
| Recording Fee: | $ | 237.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        03-25-2014 21:57
City Register File No.(CRFN):
        2014000103850

*Annette M Hill*
*City Register Official Signature*

Al Iman Plaza, LLC; Mortgagor

TO

Woodbridge Mortgage Investment Fund 1, LLC, a Delaware LLC, Mortgagee

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Dated as of:    March 13, 2014

Location:            2008 Westchester Avenue
                     Bronx, New York 10462

Section: Bronx County
Block:   3805
Lot:     1
County:  Bronx
Municipality: Bronx

### RECORD AND RETURN TO:

Woodbridge Mortgage Investment Fund 1, LLC, a Delaware LLC
c/o Richard P. Roberts, Esq.
Halloran & Sage LLP
225 Asylum Street
Hartford, CT 06103-4303

THIS MORTGAGE made as of the March 13, 2014, by **Al Iman Plaza, LLC,** a New York limited liability company organized and existing under the laws of the State of New York, having an office at 2008 Westchester Avenue, Bronx, New York 10462 (hereinafter referred to as the "**Mortgagor**") and Woodbridge Mortgage Investment Fund 1, LLC, a Delaware LLC, having its principal place of business at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, CA 91423 (hereinafter referred to as the "**Mortgagee**").

## WITNESSETH:

WHEREAS, the Mortgagor is the owner of a fee estate in the premises described in Exhibit A attached hereto (the "**Premises**");

NOW, THEREFORE, to secure the payment of an indebtedness in the principal sum of One Million Six Hundred Seventy Five Thousand and NO/100 ($1,675,000.00) DOLLARS, lawful money of the United States of America, to be paid with interest according to a certain Note dated the date hereof given by the Mortgagor to the Mortgagee (the "**Note**") (said indebtedness, interest and all other sums which may or shall become due hereunder, collectively, the "**Debt**"), the Mortgagor has mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed and assigned, and by these presents does mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm and assign unto the Mortgagee forever all right, title and interest of the Mortgagor now owned, or hereafter acquired, in and to the following property, rights and interest (such property, rights and interests, collectively, the "**Mortgaged Property**"):

(a)    The Premises;

(b)    all buildings and improvements now or hereafter located on the Premises (the "**Improvements**");

(c)    all of the estate, right, title, claim or demand of any nature whatsoever of the Mortgagor, either in law or in equity, in possession or expectancy, in and to the Mortgaged Property or any part thereof;

(d)    all easements, rights-of-way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Mortgaged Property (including, without limitation, any and all development rights, air rights or similar or comparable rights of any nature whatsoever now or hereafter appurtenant to the Premises or now or hereafter transferred to the Premises) and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof;

(e)    all machinery, apparatus, equipment, fittings, fixtures and other property of every kind and nature whatsoever and all additions thereto and renewals and replacements thereof, and all substitutions therefor now owned or hereafter acquired by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter located upon or in, or attached to, any portion of the Mortgaged Property or appurtenances thereto, and used or usable in connection with the present or future operation and occupancy of the Mortgaged Property and all building equipment, materials and supplies of any nature whatsoever owned by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and whether stored at the Mortgaged Property or off-site (collectively, the

2

"Equipment"), and the right, title and interest of the Mortgagor in and to any of the Equipment which may be subject to any security agreements (as defined in the Uniform Commercial Code of New York), superior in lien to lien of this Mortgage and all proceeds and products of any of the above;

(f)     all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Mortgaged Property;

(g)     all leases and other agreements affecting the use or occupancy of the Mortgaged Property now or hereafter entered into (the "Leases") and the right to receive and apply the rents, issues and profits of the Mortgaged Property (the "Rents") to the payment of the Debt which Leases and Rents are hereby absolutely and unconditionally assigned to Mortgagee;

(h)     all right, title and interest of the Mortgagor in and to (i) all contracts from time to time executed by the Mortgagor or any manager or agent on its behalf relating to the ownership, construction, maintenance, repair, operation, occupancy, sale or financing of the Mortgaged Property or any part thereof and all agreements relating to the purchase or lease of any portion of the Mortgaged Property or any property which is adjacent or peripheral to the Mortgaged Property, together with the right to exercise such options and all leases of Equipment, (ii) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the Mortgaged Property or any part thereof, and (iii) all drawings, plans, specifications and similar or related items relating to the Mortgaged Property;

(i)     all trade names, trademarks, logos, copyrights, good will and books and records relating to or used in connection with the operation of the Mortgaged Property or any part thereof; all general intangibles related to the operation of the Mortgaged Property now existing or hereafter arising;

(j)     all proceeds, both cash and non-cash, of the foregoing;

(k)     all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property; and

(l)     the right, in the name and on behalf of the Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of the Mortgagee in the Mortgaged Property.

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the proper use and benefit of the Mortgagee, and the successors and assigns of the Mortgagee, forever.

AND the Mortgagor covenants and agrees with and represents and warrants to the Mortgagee as follows:

1.     Payment of Debt.  The Mortgagor will pay the Debt at the time and in the manner

3

provided for its payment in the Note and in this Mortgage.

2.    <u>Warranty of Title.</u>

(a)    Subject only to those exceptions to title specifically set forth in the title policy issued or to be issued by Chicago Title Insurance Company to the Mortgagee and insuring the lien of this Mortgage, the Mortgagor warrants the title to the Premises, the Improvements, the Equipment and the balance of the Mortgaged Property. The Mortgagor also represents and warrants that (i) the Mortgagor is now, and after giving effect to this Mortgage, will be in a solvent condition, (ii) the execution and delivery of this Mortgage by the Mortgagor does not constitute a "fraudulent conveyance" within the meaning of Title 11 of the United States Code as now constituted or under any other applicable statute, and (iii) no bankruptcy or insolvency proceedings are pending or contemplated by or against the Mortgagor.

(b)    The Mortgagor (and the undersigned representative of the Mortgagor, if any) additionally represents and warrants that: (i) it has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on the Mortgagor's part to be performed, (ii) if the Mortgagor is a corporation, the Mortgagor is a duly organized and presently existing corporation and this Mortgage has been executed by authority of its Board of Directors and with the requisite consent of the holders of the outstanding shares of its capital stock entitled to vote thereon, if such consent is required under the provisions of the certificate of incorporation of the Mortgagor, (iii) if the Mortgagor is a partnership, the Mortgagor is a duly authorized and validly existing partnership and this Mortgage has been executed by a duly authorized general partner and (iv) if the Mortgagor is a limited liability company, this Mortgage has been authorized and executed in accordance with the provisions of the operating agreement of the Mortgagor.

3.    <u>Insurance.</u>

The Mortgagor (i) will keep the Improvements and the Equipment insured against loss or damage by fire, standard extended coverage perils and such other hazards as the Mortgagee shall from time to time require in amounts approved by the Mortgagee, which amounts shall in no event be less than 100% of the full insurable value of the Improvements and the Equipment and shall be sufficient to meet all applicable co-insurance requirements, and (ii) will maintain rental and business interruption insurance and (iii) such other forms of insurance coverage with respect to the Mortgaged Property as the Mortgagee shall from time to time require in amounts approved by the Mortgagee. All policies of insurance (the "Policies") shall be issued by insurers having a minimum policy holders rating of "A" per the latest rating publication of Property and Casualty Insurers by A.M. Best Company and who are lawfully doing business in New York and are otherwise acceptable in all respects to the Mortgagee. All Policies shall contain the standard New York mortgagee non-contribution clause endorsement or an equivalent endorsement satisfactory to the Mortgagee naming the Mortgagee as the person to which all payments made by the insurer thereunder shall be paid and shall otherwise be in form and substance satisfactory in all respects to the Mortgagee. Blanket insurance policies shall not be acceptable for the purposes of this paragraph unless otherwise approved to the contrary by the Mortgagee. The Mortgagor shall pay the premiums for the Policies as the same become due and payable. At the request of the Mortgagee, the Mortgagor will deliver the Policies to the Mortgagee. Not later than ten (10) days prior to the expiration date of each of the Policies, the Mortgagor will deliver to the Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment of premium satisfactory to the Mortgagee. If at any time the Mortgagee is not in receipt of written evidence that all insurance required hereunder is

4

in force and effect, the Mortgagee shall have the right without notice to the Mortgagor to take such action as the Mortgagee deems necessary to protect its interest in the Mortgaged Property, including, without limitation, the obtaining of such insurance coverage as the Mortgagee in its sole discretion deems appropriate, and all expenses incurred by the Mortgagee in connection with such action or in obtaining such insurance and keeping it in effect shall be paid by the Mortgagor to the Mortgagee upon demand. The Mortgagor shall at all times comply with and shall cause the Improvements and Equipment and the use, occupancy, operation, maintenance, alteration, repair and restoration thereof to comply with the terms, conditions, stipulations and requirements of the Policies. If the Premises, or any portion of the Improvements or the Equipment, is located in a Federally designated "**special flood hazard area**," in addition to the other Policies required under this paragraph, a flood insurance policy shall be delivered by the Mortgagor to the Mortgagee. If no portion of the Premises is located in a Federally designated "special flood hazard area" such fact shall be substantiated by a certificate in form satisfactory to the Mortgagee from a licensed surveyor, appraiser or professional engineer or other qualified person. If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other property hazard or casualty, the Mortgagor shall give prompt notice thereof to the Mortgagee. Sums paid to the Mortgagee by any insurer may be retained and applied by the Mortgagee toward payment of the Debt whether or not then due and payable in such order, priority and proportions as the Mortgagee in its discretion shall deem proper or, at the discretion of the Mortgagee, the same may be paid, either in whole or in part, to the Mortgagor for such purposes as the Mortgagee shall designate. If the Mortgagee shall receive and retain such insurance proceeds, the lien of this Mortgage shall be reduced only by the amount thereof received and retained by the Mortgagee and actually applied by the Mortgagee in reduction of the Debt. The provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire shall not apply to this Mortgage. In addition, the Mortgagee must be named as first mortgagee and loss payee as to the Mortgaged Property under the insurance policy maintained by the Mortgagor for the Mortgaged Property.

4.    <u>Payment of Taxes, etc.</u>  The Mortgagor shall pay all taxes, assessments, water rates, sewer rents and other charges, including vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed against the Mortgaged Property, and all common charges, dues and assessments imposed pursuant to the Condominium Documents, all insurance premiums, water rates and sewer rents (the "Taxes") prior to the date upon which any fine, penalty, interest or cost may be added thereto or imposed by law for the nonpayment thereof. The Mortgagor shall deliver to the Mortgagee, upon request, receipted bills, cancelled checks and other evidence satisfactory to the Mortgagee evidencing the payment of the Taxes prior to the date upon which any fine, penalty, interest or cost may be added thereto or imposed by law for the nonpayment thereof.

5.    At the option of the Mortgagee, the Mortgagor will pay to the Mortgagee on the 1st day of each calendar month one-twelfth of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by the Mortgagee to be payable, during the ensuing twelve (12) months. The Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by the Mortgagor pursuant to the provisions of this Mortgage. If the amount of the Escrow Fund shall exceed the amount of the Taxes payable by the Mortgagor pursuant to the provisions of this Mortgage, the Mortgagee shall, in its discretion, (a) return any excess to the Mortgagor, or (b) credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, the Mortgagee may deal with the person shown on the records of the Mortgagee to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the Taxes, as the same become payable, the Mortgagor shall pay to the Mortgagee, upon request, an amount which the Mortgagee shall estimate as sufficient to make up the deficiency. Until expended or applied as above provided, any amounts in the Escrow Fund

may be commingled with the general funds of the Mortgagee and shall constitute additional security for the Debt and shall not bear interest.

6.    Condemnation.  Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise, the Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and this Mortgage and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by the Mortgagee to the discharge of the Debt.  The Mortgagee may apply the entire amount of any such award or payment to the discharge of the Debt whether or not then due and payable in such order, priority and proportions as the Mortgagee in its discretion shall deem proper.  If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by the Mortgagee of such award or payment, the Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive such award or payment, or a portion thereof sufficient to pay the Debt, whichever is less.  The Mortgagor shall file and prosecute its claim or claims for any such award or payment in good faith and with due diligence and cause the same to be collected and paid over to the Mortgagee. The Mortgagor hereby irrevocably authorizes and empowers the Mortgagee, in the name of the Mortgagor or otherwise, to collect and receipt for any such award or payment and to file and prosecute such claim or claims.  Although it is hereby expressly agreed that the same shall not be necessary in any event, the Mortgagor shall, upon demand of the Mortgagee, make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning any such award or payment to the Mortgagee, free and clear of any encumbrances of any kind or nature whatsoever.

7.·    Leases and Rents.

(a)    Subject to the terms of this paragraph, the Mortgagee waives the right to enter the Mortgaged Property for the purpose of collecting the Rents, and grants the Mortgagor the right to collect the Rents.  The Mortgagor shall hold the Rents, or an amount sufficient to discharge all current sums due on the Debt, in trust for use in payment of the Debt.  The right of the Mortgagor to collect the Rents may be revoked by the Mortgagee upon any default by the Mortgagor under the terms of the Note or this Mortgage by giving notice of such revocation to the Mortgagor.  Following such notice the Mortgagee may retain·and apply the Rents toward payment of the Debt in such order, priority and proportions as the Mortgagee, in its discretion, shall deem proper, or to the operation, maintenance and repair of the Mortgaged Property, and irrespective of whether the Mortgagee shall have commenced a foreclosure of .this Mortgage or shall have applied or arranged for the appointment of a receiver.  The Mortgagor shall not, without the consent of the Mortgagee, make, or suffer to be made, any Leases or cancel any Leases or modify or cancel any Leases or accept prepayments of installments of the Rents for a period of more than one (1) month in advance or further assign the whole or any part of the Rents.  The Mortgagee shall have all of the rights against tenants of the Mortgaged Property as set forth in Section 291-f of the Real Property Law of New York.  The Mortgagor shall (a) fulfill or perform each and every provision of the Leases on the part of the Mortgagor to be fulfilled or performed, (b) promptly send copies of all notices of default which the Mortgagor shall send.or receive under the Leases to the Mortgagee, and (c) enforce, short of termination of the Leases, the performance or observance of the provisions thereof by the tenants thereunder.  In addition to the rights which the Mortgagee may have herein, in the event of any default under this Mortgage, the Mortgagee, at its option, may require the Mortgagor to pay monthly in advance to the Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be in possession of the Mortgagor.  Upon default in any such payment, the Mortgagor will vacate and surrender possession of the Mortgaged Property to the Mortgagee, or to such receiver, and, in default

6

thereof, the Mortgagor may be evicted by summary proceedings or otherwise. Nothing contained in this paragraph shall be construed as imposing on the Mortgagee any of the obligations of the lessor under the Leases.

(b)    Mortgagor acknowledges and agrees that, upon recordation of this Mortgage, Mortgagee's interest in the Rents shall be deemed to be fully perfected "choate" and enforced as to Mortgagor and all third parties, including without limitation, any subsequently appointed trustee in any case under the U.S. Bankruptcy Code, without the necessity of (i) commencing a foreclosure action with respect to this Mortgage, (ii) furnishing notice to Mortgagor or tenants under the Leases, (iii) making formal demand for the Rents (iv) taking possession of the Mortgaged Property as a Mortgagee-in-possession, (v) obtaining the appointment of a receiver of rents and profits of the Mortgaged Property, (vi) sequestering or impounding the Rents, or (vii) taking any other affirmative action.

(c)    For purposes of 11 U.S.C. Section 552 (b), Mortgagor and Mortgagee agree that this Mortgage shall constitute a "security agreement," that the security interest created by such security agreement extends to property of Borrower acquired before the commencement of a case in bankruptcy and to all amounts paid as Rents and that such security interest shall extend to all Rents acquired by the estate after the commencement of a case in bankruptcy.

(d)    Mortgagor hereby further acknowledges and agrees that all Rents are and shall be deemed to be "Cash Collateral" under Section 363 of the U.S. Bankruptcy Code in the event that Mortgagor files a voluntary petition in bankruptcy or is made subject to any involuntary bankruptcy proceeding. Borrower may not use the Cash Collateral without the consent of Mortgagee and/or an order of any bankruptcy court pursuant to 11 U.S.C. 363(b) (2), and Mortgagor hereby waives any right it may have to assert that the Rents do not constitute Cash Collateral. No consent by Mortgagee to the use of Cash Collateral by Mortgagor shall be deemed to constitute Mortgagee's approval of the purpose for which such Cash Collateral was expended.

8.    <u>Maintenance of the Mortgaged Property</u>. The Mortgagor shall cause the Mortgaged Property to be maintained in good condition and repair and will not commit or suffer to be committed any waste of the Mortgaged Property. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the prior written consent of the Mortgagee. The Mortgagor shall promptly comply with all existing and future governmental laws, orders, ordinances, rules and regulations affecting the Mortgaged Property, or any portion thereof or the use thereof, including without limitation, the Americans with Disabilities Act of 1990 (42 U.S.C.A. Sec. 12101 et. seq). The Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be damaged or destroyed by fire or other property hazard or casualty (including any fire or other property hazard or casualty for which insurance was not obtained or obtainable) or which may be affected by any taking by any public or quasi-public authority through eminent domain or otherwise, and shall complete and pay for, within a reasonable time, any structure at any time in the process of construction or repair on the Premises. If such fire or other property hazard or casualty shall be covered by the Policies, the Mortgagor's obligation to repair, replace or rebuild such portion of the Mortgaged Property shall be contingent upon the Mortgagee paying the Mortgagor the proceeds of the Policies, or such portion thereof as shall be sufficient to complete such repair, replacement or rebuilding, whichever is less. The Mortgagor will not, without obtaining the prior consent of the Mortgagee, initiate, join in or consent to any private restrictive covenant, zoning ordinance, or other public or private restrictions, limiting or affecting the uses which may be made of the Mortgaged Property or any part thereof.

7

9.    Environmental Provisions.

(a)    For the purposes of this paragraph the following terms shall have the following meanings: (i) the term "**Hazardous Material**" shall mean any material or substance that, whether by its nature or use, is now or hereafter defined or regulated as a hazardous waste, hazardous substance, pollutant or contaminant under any Environmental Requirement, or which is toxic, explosive, corrosive, flammable, infectious, radioactive, carcinogenic, mutagenic or otherwise hazardous or which is or contains petroleum, gasoline, diesel fuel, another petroleum hydrocarbon product, asbestos, asbestos-containing materials or polychlorinated biphenyls, (ii) the term "**Environmental Requirements**" shall collectively mean all present and future laws, statutes, common law, ordinances, rules, regulations, orders, codes, licenses, permits, decrees, judgments, directives or the equivalent of or by any Governmental Authority and relating to or addressing the protection of the environment or human health, and (iii) the term "**Governmental Authority**" shall mean the Federal government, or any state or other political subdivision thereof, or any agency, court or body of the Federal government, any state or other political subdivision thereof, exercising executive, legislative, judicial, regulatory or administrative functions.

(b)    The Mortgagor hereby represents and warrants to the Mortgagee that, to the best of Mortgagor's knowledge, after diligent inquiry, (i) no Hazardous Material is currently located at, in, on, under or about the Mortgaged Property in manner which violates any Environmental Requirement, or which requires cleanup or corrective action of any kind under any Environmental Requirement, (ii) no releasing, emitting, discharging, leaching, dumping, disposing or transporting of any Hazardous Material from the Mortgaged Property onto any other property or from any other property onto or into the Mortgaged Property has occurred or is occurring in violation of any Environmental Requirement, (iii) no notice of violation, non-compliance, liability or potential liability, lien, complaint, suit, order or other notice with respect to the Mortgaged Property is presently outstanding under any Environmental Requirement, nor does the Mortgagor have knowledge or reason to believe that any such notice will be received or is being threatened, and (iv) the Mortgaged Property and the operation thereof are in full compliance with all Environmental Requirements.

(c)    The Mortgagor shall comply, and shall cause all tenants or other occupants of the Mortgaged Property to comply, in all respects with all Environmental Requirements, and will not generate, store, handle, process, dispose of or otherwise use, and will not permit any tenant or other occupant of the Mortgaged Property to generate, store, handle, process, dispose of or otherwise use, Hazardous Materials at, in, on, or about the Mortgaged Property in a manner that could lead or, potentially lead to the imposition on the Mortgagor, the Mortgagee or the Mortgaged Property of any liability or lien of any nature whatsoever under any Environmental Requirement. The Mortgagor shall notify the Mortgagee promptly in the event of any spill or other release of any Hazardous Material at, in, on, under or about the Mortgaged Property which is required to be reported to a Governmental Authority under any Environmental Requirement, will promptly forward to the Mortgagee copies of any notices received by the Mortgagor relating to alleged violations of any Environmental Requirement or any potential liability under any Environmental Requirement and will promptly pay when due any fine or assessment against the Mortgagee, the Mortgagor or the Mortgaged Property relating to any Environmental Requirement. If at any time it is it is determined that the operation or use of the Mortgaged Property is in violation of any applicable Environmental Requirement or that there are Hazardous Materials located at, in, on, under or about the Mortgaged Property which violate any applicable Environmental Requirement or that there are Hazardous Materials located at, in, on, under or about the Mortgaged Property which, under any Environmental Requirement, require special handling in collection, storage, treatment or disposal, or any form of cleanup or corrective action,

8

the Mortgagor shall, within thirty (30) days after receipt of notice thereof from any Governmental Authority or from the Mortgagee, take, at the Mortgagor's sole cost and expense, such actions as may be necessary to fully comply in all respects with all Environmental Requirements, provided, however, that if such compliance cannot reasonably be completed within such thirty (30) day period, the Mortgagor shall commence such necessary action within such thirty (30) day period and shall thereafter diligently and expeditiously proceed to fully comply in all respects and in a timely fashion with all Environmental Requirements.

(d)     If the Mortgagor fails to timely take, or to diligently and expeditiously proceed to complete in a timely fashion, any such action described in clause (c) above, the Mortgagee may, in its sole and absolute discretion, make advances or payments toward the performance or satisfaction of the same, but shall in no event be under any obligation to do so. All sums so advanced or paid by the Mortgagee (including, without limitation, reasonable counsel fees and all consultant fees and expenses, investigation and laboratory fees and expenses, and fines or other penalty payments) and all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, will immediately, upon demand, become due and payable from the Mortgagor and shall bear interest at the Default Rate from the date any such sums are so advanced or paid by the Mortgagee until the date any such sums are repaid by the Mortgagor to the Mortgagee. The Mortgagor will execute and deliver, promptly upon request, such instruments as the Mortgagee may deem useful or necessary to permit the Mortgagee to take any such action, and such additional notes and mortgages, as the Mortgagee may require to secure all sums so advanced or paid by the Mortgagee. If a lien is filed against the Mortgaged Property by any Governmental Authority resulting from the need to expend or the actual expending of monies arising from an action or omission, whether intentional or unintentional, of the Mortgagor or for which the Mortgagor is responsible, resulting in the releasing, spilling, leaking, leaching, pumping, emitting, pouring, emptying or dumping of any Hazardous Material into the waters or onto land located within or without the State where the Mortgaged Property is located, then the Mortgagor will, within thirty (30) days from the date that the Mortgagor is first given notice that such lien has been placed against the Mortgaged Property (or within such shorter period of time as may be specified by the Mortgagee if such Governmental Authority has commenced steps to cause the Mortgaged Property to be sold pursuant to such lien), either (a) pay the claim and remove the lien, or (b) furnish a cash deposit, bond, or such other security with respect thereto as is satisfactory in all respects to the Mortgagee and is sufficient to effect a complete discharge of such lien on the Mortgaged Property.

(e)     The Mortgagee may, at its option, at intervals of not less than one year, or more frequently if the Mortgagee reasonably believes that a Hazardous Material or other environmental condition violates or threatens to violate any Environmental Requirement, cause an environmental audit of the Mortgaged Property or portions thereof to be conducted to confirm the Mortgagor's compliance with the provisions of this paragraph, and the Mortgagor shall cooperate in all reasonable ways with the Mortgagee connection with any such audit. If such audit discloses that a violation of or a liability under an Environmental Requirement exists or if such audit was required or prescribed by law, regulation or governmental or quasi-governmental authority, the Mortgagor shall pay all costs and expenses incurred in connection with such audit; otherwise, the costs and expenses of such audit shall, notwithstanding anything to the contrary set forth in this paragraph, be paid by the Mortgagee.

(f)     If this Mortgage is foreclosed, or if the Mortgaged Property is sold pursuant to the provisions of this Mortgage, or if the Mortgagor tenders a deed or assignment in lieu of foreclosure or sale, the Mortgagor shall deliver the Mortgaged Property to the purchaser at

9

foreclosure or sale or to the Mortgagee, its nominee, or wholly-owned subsidiary, as the case may be, in a condition that complies in all respects with all·Environmental Requirements.

(g)     The Mortgagor will defend, indemnify, and hold harmless the Mortgagee, its co-lenders, participants, employees, agents, officers, and directors, from and against any and all claims, demands, penalties, causes of action, fines, liabilities, settlements, damages, costs, or expenses of whatever kind or nature, known or unknown, foreseen or unforeseen, contingent or otherwise (including, without limitation, counsel and consultant fees and expenses, investigation and laboratory fees and expenses, court costs, and litigation expenses) arising out of, or in any way related to, (i) any breach by the Mortgagor of any of the provisions of this paragraph 9, (ii) the presence, disposal, spillage, discharge, emission, leakage, release, or threatened release of any Hazardous Material which is at, in, on, under, about, from or affecting the Mortgaged Property, including, without limitation, any damage or injury resulting from any such Hazardous Material to or affecting the Mortgaged Property or the soil, water, air, vegetation, buildings, personal property, persons or animals located on the Mortgaged Property or on any other property or otherwise, (iii) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to any such Hazardous Material, (iv) any lawsuit brought or threatened, settlement reached, or order or directive of or by any Governmental Authority relating to such Hazardous Material, or (v) any violation of any Environmental Requirement or any policy or requirement of the Mortgagee hereunder. The aforesaid indemnification shall, notwithstanding any exculpatory or other provision of any other document or instrument now or hereafter executed and delivered in connection with the loan evidenced by the Note and secured by this Mortgage, constitute the personal recourse undertakings, obligations and liabilities of the Mortgagor. The obligations and liabilities of the Mortgagor under this paragraph 9 shall survive and continue in full force and effect and shall not be terminated, discharged or released, in whole or in part, irrespective of whether the Debt has been paid in full and irrespective of any foreclosure of this Mortgage, sale of the Mortgaged Property pursuant to the provisions of this Mortgage or acceptance by the Mortgagee, its nominee or affiliate of a deed or assignment in lieu of foreclosure or sale and irrespective of any other fact or circumstance of any nature whatsoever.

10.     Estoppel Certificates.   The Mortgagor, within ten (10) days after request by the Mortgagee and at its expense, will furnish the Mortgagee with a statement, duly acknowledged and certified, setting forth the amount of the Debt and the offsets or defenses thereto, if any.

11.     Transfer or Encumbrance of the Mortgaged Property.

No part of the Mortgaged Property nor any interest of any nature whatsoever therein nor any interest of any nature whatsoever in the Mortgagor or any Guarantor (whether partnership, stock, equity, beneficial, profit, loss or otherwise) shall in any manner, directly or indirectly, be further encumbered, sold, transferred or conveyed, or permitted to be further encumbered, sold, transferred, assigned or conveyed without the prior consent of the Mortgagee, which consent in any and all circumstances may be withheld in the sole and absolute discretion of the Mortgagee. The provisions of the foregoing sentence of this paragraph shall apply to each and every such further encumbrance, sale, transfer, assignment or conveyance, regardless of whether or not the Mortgagee has consented to, or waived by its action or inaction its rights hereunder with respect to, any such previous further·encumbrance, sale, transfer, assignment or conveyance, and irrespective of whether such further encumbrance, sale, transfer, assignment or conveyance is voluntary, by reason of operation of law or is otherwise made.

12.     Notice.  Any notice, request, demand, statement, authorization, approval or consent made hereunder shall be in writing and shall be hand delivered or sent by Federal Express, or other

reputable courier service, or by postage pre-paid registered or certified mail, return receipt requested, and shall be deemed given (i) when received at the following addresses if hand delivered or sent by Federal Express, or other reputable courier service, and (ii) three (3) business days after being postmarked and addressed as follows if sent by registered or certified mail, return receipt requested:

| | |
|---|---|
| If to Mortgagor: | Al Iman Plaza, LLC<br>2008 Westchester Avenue<br>Bronx, New York 10462<br>Attention: |
| If to the Mortgagee: | Woodbridge Mortgage Investment Fund 1, LLC, a Delaware LLC<br>14225 Ventura Boulevard, Suite 100<br>Sherman Oaks, CA 91423<br>Attention: General Counsel |
| With a copy to: | Finger & Finger, A Professional Corporation<br>158 Grand Street<br>White Plains, New York 10601<br>Attention: Daniel S. Finger, Esq. |

Each party may designate a change of address by notice to the other party, given at least fifteen (15) days before such change of address is to become effective.

13.    Sale of Mortgaged Property.

(a)    In the event of a default hereunder, Mortgagee, may choose to utilize, if permitted under the laws of the State of New York, a non-judicial foreclosure by power of sale of this mortgage.

(b)    If this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may, at the discretion of the Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner.

14.    Changes in Laws Regarding Taxation. In the event of the passage after the date of this Mortgage of any law of the State of New York deducting from the value of real property for the purpose of taxation any lien or encumbrance thereon or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for state or local purposes or the manner of the collection of any such taxes, and imposing a tax, either directly or indirectly, on this Mortgage, the Note or the Debt, the Mortgagor shall, if permitted by law, pay any tax imposed as a result of any such law within the statutory period or within fifteen (15) days after demand by the Mortgagee, whichever is less, provided, however, that, if, in the opinion of the attorneys for the Mortgagee, the Mortgagor is not permitted by law to pay such taxes, the Mortgagee shall have the right, at its option, to declare the Debt due and payable on a date specified in a prior notice to the Mortgagor of not less than thirty (30) days.

15.    No Credits on Account of the Debt. The Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes assessed against the Mortgaged Property or any part thereof and no deduction shall otherwise be made or claimed from the taxable value of the Mortgaged Property, or any part thereof, by reason of this Mortgage or the Debt. If at any time this Mortgage shall secure less than all of the principal amount of the Debt, it is expressly agreed that any repayment of the principal amount of the Debt shall not

11

reduce the amount of the lien of this Mortgage until the lien amount shall equal the principal amount of the Debt outstanding.

16.    Offsets, Counterclaims and Defenses. Any assignee of this Mortgage and the Note shall take the same free and clear of all offsets, counterclaims or defenses of any nature whatsoever which the Mortgagor may have against any assignor of this Mortgage and the Note, and no such offset, counterclaim or defense shall be interposed or asserted by the Mortgagor in any action or proceeding brought by any such assignee upon this Mortgage or the Note and any such right to interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by the Mortgagor.

17.    Other Security for the Debt. The Mortgagor shall observe and perform all of the terms, covenants and provisions contained in the Note and in all other mortgages and other instruments or documents evidencing, securing or guaranteeing payment of the Debt, in whole or in part, or otherwise executed and delivered in connection with the Note, this Mortgage or the loan evidenced and secured thereby.

18.    Documentary Stamps. If at any time the United States of America, any state thereof, or any governmental subdivision of any such state, shall require revenue or other stamps to be affixed to the Note or this Mortgage, the Mortgagor will pay for the same, with interest and penalties thereon, if any.

19.    Right of Entry. Upon prior notice, the Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times.

20.    Books and Records. The Mortgagor will keep and maintain or will cause to be kept and maintained on a fiscal year basis in accordance with sound accounting practices consistently applied proper and accurate books, records and accounts reflecting all of the financial affairs of the Mortgagor and all items of income and expense in connection with the operation of the Mortgaged Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Mortgaged Property, whether such income or expenses be realized by the Mortgagor or by any other person whatsoever excepting lessees unrelated to and unaffiliated with the Mortgagor who have leased from the Mortgagor portions of the Mortgaged Property for the purpose of occupying the same. The Mortgagee shall have the right from time to time upon reasonable notice at all times during normal business hours to examine such books, records and accounts at the office of the Mortgagor or other person maintaining such books, records and accounts and to make copies or extracts thereof as the Mortgagee shall desire. The Mortgagor will furnish or cause to be furnished to the Mortgagee, annually, (i) within ninety (90) days following the end of the fiscal year of the Mortgagor, commencing with the year ending December 31, 2013, a property-level report showing income and expenses of the Mortgaged Property and a rent roll for the Mortgaged Property, each certified to be true and correct by a member of the Mortgagor; (ii) commencing with the 2012 tax year, an annual Form 990 tax return from the Mortgagor, with all supporting schedules, within thirty (30) days following the filing thereof; and (iii) within thirteen (13) months from the date of delivery to the Mortgagee of its last financial statement. All of the foregoing statements shall be satisfactory in all respects to the Mortgagee. If the Mortgagor shall fail to deliver any of the foregoing documents to the Mortgagee as and when required, the Mortgagor will pay to the Mortgagee, upon request, a $500 fee for each such failure. Within sixty (60) days after the end of each fiscal year of the Mortgagor, the Mortgagor shall furnish, to the Mortgagee a certificate signed by a duly authorized representative of the Mortgagor certifying on the date thereof either that there does or does not exist an event which constitutes, or which upon notice or lapse of time or both would constitute, a default or an Event of Default under this Mortgage and if such default or Event of Default exists, the nature thereof and the

12

period of time it has existed. The Mortgagor shall deliver to the Mortgagee within fifteen (15) days following the filing thereof, a copy of the federal income tax returns and all schedules thereto, signed and dated and filed with the Internal Revenue Service of the Mortgagor and Sheikh Moussa Drammeh (the "**Guarantor**"). Evidence of an extension request, if applicable, for either the Mortgagor or the Guarantor, shall be furnished to the Mortgagee. The Mortgagor shall deliver to the Mortgagee within fifteen (15) days following the filing thereof any other documents filed with eh Internal Revenue Service by either the Mortgagor or the Guarantor. The Mortgagor shall furnish the Mortgagee with such additional financial information or other information pertaining to the operation of the Mortgaged Property and/or to the financial condition or operations of the Mortgagor or any Guarantor as the Mortgagee may from time to time request, including, but not limited to, accounts receivable aging, accounts payable aging and internal financial statements.

21.  <u>Performance of Other Agreements</u>. The Mortgagor shall observe and perform each and every term to be observed or performed by the Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

22.  <u>Events of Default</u>. The Debt shall become due at the option of the Mortgagee upon the occurrence of any one or more of the following events (herein collectively referred to as Events of Default):

(a)  if any portion of the Debt is not paid within five (5) days after the same is due;

(b)  if the Mortgagor shall fail to pay within twenty (20) days of notice and demand by the Mortgagee, any installment of any assessment against the Mortgaged Property for local improvements heretofore or hereafter laid, which assessment is or may become payable in annual or periodic installments and is or may become a lien on the Mortgaged Property;

(c)  if any Federal tax lien is filed against the Mortgagor, any Guarantor or the Mortgaged Property and the same is not discharged of record within thirty (30) days after written notice thereof to Mortgagor;

(d)  if without the consent of the Mortgagee (which consent in any and all circumstances may be withheld in the sole and absolute discretion of the Mortgagee) any part of the Mortgaged Property or any interest of any nature whatsoever therein or any interest of any nature whatsoever in the Mortgagor, or any Guarantor (whether partnership, stock, equity, beneficial, profit, loss or otherwise) is in any manner, by operation of law or otherwise, whether directly or indirectly, further encumbered (except as otherwise permitted), sold, transferred, assigned or conveyed, and irrespective of whether any such further encumbrance, sale, transfer, assignment or conveyance is voluntary, by reason or operation of law or is otherwise made;

(e)  if without the consent of the Mortgagee any Improvement or the Equipment (except for the normal replacement of the Equipment) is removed, demolished or materially altered, or if the Mortgaged Property is not kept in good condition and repair;

(f)  if the Mortgagor shall fail to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Mortgaged Property within three (3) months from the issuance thereof, or the time period set forth therein, whichever is less, provided that, if such requirement or order or notice cannot reasonably be complied with within such three-month period and the Mortgagor shall have commenced to comply therewith within such three-month period and thereafter diligently and

13

expeditiously proceeds to complete such compliance, such three-month period shall be extended for so long as it shall require the Mortgagor in the exercise of due diligence to complete such compliance, it being agreed that no such extension shall be for a period in excess of one hundred twenty (120) days;

(g)    if the Policies are not kept in full force and effect, or if the Policies are not delivered to the Mortgagee within ten (10) days after written request by Mortgagee;

(h)    if on application of the Mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue Policies;

(i)    . if the Mortgagor shall fail to pay the Mortgagee within ten (10) days following demand therefor all Premiums and/or Taxes paid by the Mortgagee pursuant to this Mortgage, together with any late payment charge and interest thereon calculated at the Default Rate;

(j)    if without the consent of the Mortgagee any portion of the Rents is paid for a period of more than one (1) month in advance or if any of the Rents are further assigned;

(k)    if any representation or warranty of the Mortgagor, or of any person (herein referred to as a Guarantor) guaranteeing payment of the Debt or any portion thereof, or of operating expenses of the Mortgaged Property or guaranteeing performance by the Mortgagor of any of the terms of this Mortgage made herein or in any such guaranty (the "Guaranty"), or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Mortgage, or any such Guaranty, shall prove false or misleading in any material respect;

(l)    if the Mortgagor or any Guarantor shall make an assignment for the benefit of creditors;

(m)    if a court of competent jurisdiction enters a decree or order for relief with respect to the Mortgagor or any Guarantor under Title 11 of the United States Code as now constituted or hereafter amended or under any other applicable Federal or state bankruptcy law or other similar law, or if such court enters a decree or order appointing a receiver, liquidator, assignee, trustee, sequestrator (or similar official) of the Mortgagor or any Guarantor, or of any substantial part of their respective properties, or if such court decrees or orders the winding up or liquidation of the affairs of the Mortgagor or any Guarantor;

(n)    if the Mortgagor or any Guarantor files a petition or answer or consent seeking relief under Title 11 of the United States Code as now constituted or hereafter amended, or under any other applicable Federal or state bankruptcy law or other similar law, or if the Mortgagor or any Guarantor consents to the institution of proceedings thereunder or to the filing of any such petition or to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of the Mortgagor or any Guarantor, or of any substantial part of their respective properties, or if the Mortgagor or any Guarantor fails generally to pay their respective debts as such debts become due, or if the Mortgagor or any Guarantor takes any action in furtherance of any action described in this subparagraph;

(o)    if the Mortgagor or other person, or any Guarantor, shall be in default hereunder or under the Note, the Mortgage or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt, in whole or in part, or otherwise executed and delivered in connection with the Note, this Mortgage or the loan evidenced and secured thereby;

(p)    if the Mortgagor or other person, or any Guarantor, shall be in default under any

14

mortgage or deed of trust covering any part of the Mortgaged Property whether superior or inferior in lien to this Mortgage, and including, without limitation, any such mortgage or deed of trust now or hereafter held by the Mortgagee;

(q)      if the Mortgaged Property shall become subject (i) to any tax lien, other than a lien for local real estate taxes and assessments not due and payable, or (ii) to any lis pendens, notice of pendency, stop order, notice of intention to file mechanic's or materialman's lien, mechanic's or materialman's lien, or other liens of any nature whatsoever, and the same shall not either be discharged of record or in the alternative insured over to the satisfaction of the Mortgagee by the title company insuring the lien of this Mortgage within a period of sixty (60) days after the same is filed or recorded, and irrespective of whether the same is superior or subordinate in lien or other priority to the lien of this Mortgage and irrespective of whether the same constitutes a perfected or inchoate lien or encumbered on the Mortgaged Property or is only a matter of record or notice;

(r)      if any Guarantor shall die, become legally incapacitated, terminated, dissolved, wound up or liquidated or if any Guarantor shall be in default under its guarantee;

(s)      if the Mortgagor or any Guarantor shall fail to pay when due any obligations or shall fail or neglect to keep or observe any term, provision, condition, warranty or representation contained in any other note or loan document evidencing or securing any other loan from the Mortgagee to the Mortgagor or any Guarantor, whether now or hereafter existing;

(t)      if the Mortgagee deems itself insecure or if there is such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any Guarantor which the Mortgagee believes materially impairs the financial condition of the Mortgagor or any Guarantor or increases the Mortgagee's risk of non-payment of the Note secured hereby;

(u)      if the Mortgagor shall fail to fully and punctually perform each and every obligation on the part of the Mortgagor to be performed in connection with the Corporate Documents or, without the prior written consent of the Mortgagee, shall join in or consent to any amendment thereof or to any Restrictive Covenant or amendment thereof;

(v)      if the Mortgagor shall continue to be in default under any of the other terms, covenants or conditions of this Mortgage for five (5) days after notice from the Mortgagee in the case of any default which can be cured by the payment of a sum of money or for twenty (20) days after notice from the Mortgagee in the case of any other default, provided that, if such default cannot reasonably be cured within such twenty (20) day period and the Mortgagor shall have commenced to cure such default within such twenty (20) day period and thereafter diligently and expeditiously proceeds to cure the same, such twenty (20) day period shall be extended for so long as it shall require the Mortgagor in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of sixty (60) days.

Upon the occurrence of an Event of Default, the Mortgagee may at any time, at its option and in its sole discretion, (i) bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce the covenants hereof, (ii) exercise any or all of the remedies available to a secured party under the Uniform Commercial Code, and (iii) exercise any or all of its other rights and remedies under the Mortgage, the other Loan Documents and applicable law.

23.      <u>Right to Cure Defaults</u>.  If default in the performance of any of the covenants of the Mortgagor herein occurs, the Mortgagee may, at its discretion, remedy the same and for such

15

purpose shall have the right to enter upon the Mortgaged Property or any portion thereof without thereby becoming liable to the Mortgagor or any person in possession thereof holding under the Mortgagor. If the Mortgagee shall remedy such a default or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, the costs and expenses thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this paragraph, shall be paid by the Mortgagor to the Mortgagee upon demand. All such costs and expenses incurred by the Mortgagee in remedying such default or in appearing in, defending, or bringing any such action or proceeding shall be paid by the Mortgagor to the Mortgagee upon demand, with interest (calculated for the actual number of days elapsed on the basis of a 360-day year) at a rate per annum equal to twenty four percent (24%) per annum (herein referred to as the **"Default Rate"**), provided, however, that the Default Rate shall in no event exceed the maximum interest rate which the Mortgagor may by law pay, for the period after notice from the Mortgagee that such costs or expenses were incurred to the date of payment to the Mortgagee. To the extent any of the aforementioned costs or expenses paid by the Mortgagee after default by the Mortgagor shall constitute payment of (i) taxes, charges or assessments which may be imposed by law upon the Mortgaged Property, (ii) premiums on insurance policies covering the Mortgaged Property, (iii) expenses incurred in upholding the lien of this Mortgage, including, but not limited to, the costs and expenses of any litigation to collect the indebtedness secured by this Mortgage or to prosecute, defend, protect or preserve the rights and the lien created by this Mortgage, or (iv) any amount, cost or charge to which the Mortgagee becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority; then, and in each such event, such costs, expenses and amounts, together with interest thereon at the Default Rate, shall be added to the indebtedness secured by this Mortgage and shall be secured by this Mortgage. Notwithstanding anything to the contrary contained in this Mortgage, the maximum amount of the principal indebtedness secured by this Mortgage at execution or which under any contingency may become secured by this Mortgage is One Million Six Hundred Seventy Five Thousand AND NO/100 ($1,675,000.00) DOLLARS plus all amounts expended by the Mortgagee after default by the Mortgagor, as hereinabove set forth in this paragraph.

24.    Appointment of Receiver.  The Mortgagee, in any action to foreclose this Mortgage or upon the actual or threatened waste to any part of the Mortgaged Property or upon the occurrence of any default hereunder, shall be at liberty, without notice, to apply for the appointment of a receiver of the Rents, and shall be entitled to the appointment of such receiver as a matter of right, without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person then liable for the payment of the Debt.

25.    Non-Waiver.  The failure of the Mortgagee to insist upon strict performance of any term of this Mortgage shall not be deemed to be a waiver of any term of this Mortgage.  The Mortgagor shall not be relieved of the Mortgagor's obligation to pay the Debt at the time and in the manner provided for its payment in the Note and this Mortgage by reason of (i) failure of the Mortgagee to comply with any request of the Mortgagor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property or any other security for the Debt, or (iii) any agreement or stipulation between the Mortgagee and any subsequent owner or owners of the Mortgaged Property or other person extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, without first having obtained the consent of the Mortgagor, and in the latter event, the Mortgagor shall continue to be obligated to

16

pay the Debt at the time and in the manner provided in the Note and this Mortgage, as so extended, modified and supplemented, unless expressly released and discharged from such obligation by the Mortgagee in writing. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien, encumbrance, right, title or interest in or to the Mortgaged Property, the Mortgagee may release any person at any time liable for the payment of the Debt or any portion thereof or any part of the security held for the Debt and may extend the time of payment or otherwise modify the terms of the Note or this Mortgage, including, without limitation, a modification of the interest rate payable on the principal balance of the Note, without in any manner impairing or affecting this Mortgage or the lien thereof or the priority of this Mortgage, as so extended and modified, as security for the Debt over any such subordinate lien, encumbrance, right, title or interest. The Mortgagee may resort for the payment of the Debt to any other security held by the Mortgagee in such order and manner as the Mortgagee, in its discretion, may elect. The Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of the Mortgagee thereafter to foreclose this Mortgage. The Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every additional right and remedy now or hereafter afforded by law. The rights of the Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of the Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

26.    Liability.    If the Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. .

27.    Construction.   The terms of this Mortgage shall be construed in accordance with the laws of the State of New York.

28.    Security Agreement.   This Mortgage constitutes both a real property mortgage and a "security agreement" and a "fixture filing," within the meaning of the Uniform Commercial Code, and the Mortgaged Property includes both real and personal property and all other rights and interest, whether tangible or intangible in nature, of the Mortgagor in the Mortgaged Property. The Mortgagor by executing and delivering this Mortgage has granted to the Mortgagee, as security for the Debt, a security interest in the Equipment. The Mortgagor hereby authorizes the Mortgagee or its agents or assigns, to execute and file, without the signature of the Mortgagor, one or more UCC-1 Financing Statements for the purpose of perfecting such security interest, if permitted under the laws of the state wherein the Mortgaged Property is located. If the Mortgagor shall default under the Note or this Mortgage, the Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Equipment or any part thereof, and to take such other measures as the Mortgagee may deem necessary for the care, protection and preservation of the Equipment. Upon request or demand of the Mortgagee, the Mortgagor shall at its expense assemble the Equipment and make it available to the Mortgagee at a convenient place acceptable to the Mortgagee. The Mortgagor shall pay to the Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by the Mortgagee in protecting its interest in the Equipment and in enforcing its rights hereunder with respect to the Equipment. Any notice of sale, disposition or other intended action by the Mortgagee with respect to the Equipment sent to the Mortgagor in accordance with the provisions of this Mortgage at least seven (7) days prior to the date of any such sale, disposition or other action, shall constitute reasonable notice to the Mortgagor, and the method of sale or disposition or other intended action set forth or specified in

such notice shall conclusively be deemed to be commercially reasonable within the meaning of the Uniform Commercial Code unless objected to in writing by the Mortgagor within five (5) days after receipt by the Mortgagor of such notice. The proceeds of any sale or disposition of the Equipment, or any part thereof, may be applied by the Mortgagee to the payment of the Debt in such order, priority and proportions as the Mortgagee in its discretion shall deem proper. If any change shall occur in the Mortgagor's name, the Mortgagor shall promptly cause to be filed at its own expense, new financing statements as required under the Uniform Commercial Code to replace those on file in favor of the Mortgagee.

29.    Further Acts, etc. The Mortgagor will, at the cost of the Mortgagor, and without expense to the Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as the Mortgagee shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto the Mortgagee the property and rights hereby mortgaged or intended now or hereafter so to be, or which the Mortgagor may be or may hereafter become bound to convey or assign to the Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this mortgage and, on demand, will execute and deliver and hereby authorizes the Mortgagee to execute in the name of the Mortgagor to the extent the Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien hereof upon the Mortgaged Property.

30.    Headings, etc. The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defined or limiting, in any way, the scope or intent of the provisions hereof.

31.    Filing of Mortgage, etc. The Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect, preserve and perfect the lien hereof upon, and the interest of the Mortgagee in, the Mortgaged Property. The Mortgagor will pay all filing, registration and recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property, and any instrument of further assurance, and all Federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance. The Mortgagor shall hold harmless and indemnify the Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

32.    Usury Laws. This Mortgage and the Note are subject to the express condition that at no time shall the Mortgagor be obligated or required to pay interest on the principal balance due under the Note at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which the Mortgagor is permitted by law to contract or agree to pay. If by the terms of this Mortgage or the Note, the Mortgagor is at any time required or obligated to pay interest on the principal balance due under the Note at a rate in excess of such maximum rate, the rate of interest under the Note shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate

18

shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

33.    Sole Discretion of Mortgagee.  Except as may otherwise be expressly provided to the contrary, wherever pursuant to the Note, this Mortgage, or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise with respect to the loan secured hereby, the Mortgagee exercises any right given to it to consent or not consent, or to approve or disapprove, or any arrangement or term is to be satisfactory to the Mortgagee, the decision of the Mortgagee to consent or not consent, or to approve or disapprove, or to decide that arrangements or terms are satisfactory or not satisfactory, shall be in the sole and absolute discretion of the Mortgagee and shall be final and conclusive.

34.    Reasonableness.  If at any time the Mortgagor believes that the Mortgagee has not acted reasonably in granting or withholding any approval or consent under the Note, this Mortgage, or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise with respect to the loan secured hereby, as to which approval or consent either (i) the Mortgagee has expressly agreed to act reasonably, or (ii) absent such agreement, applicable law would nonetheless require the Mortgagee to act reasonably, then the Mortgagor's sole remedy shall be to seek injunctive relief or specific performance, and no action for monetary damages or punitive damages shall in any event or under any circumstance be maintained by the Mortgagor against the Mortgagee.

35.    Recovery of Sums Required To Be Paid.  The Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

36.    Actions and Proceedings.  The Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its discretion, determines should be brought to protect its interest in the Mortgaged Property.

37.    Inapplicable Provisions.  If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision.

38.    Duplicate Originals.  This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

39.    Certain Definitions.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided in this Mortgage, words used in this Mortgage shall be used interchangeably in singular or plural form and the word "Mortgagor" shall mean each the Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or interest therein; the word "Mortgagee" shall mean the Mortgagee or any subsequent holder of the Note; the word "Note" shall mean the Note or any other evidence of indebtedness secured by this Mortgage; the word "Guarantor" shall mean each person guaranteeing payment of the Debt or any portion thereof or indemnifying the Mortgagee against any loss arising out of the transactions referred to herein or performance by the Mortgagor of any of the terms of this Mortgage and their

respective heirs, executors, administrators, legal representatives, successors and assigns; the word "**person**" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity; the words "**Mortgaged Property**" shall include any portion of the Mortgaged Property or interest therein; and the word "**Debt**" shall mean all sums secured by this Mortgage; and the word "**default**" shall mean the occurrence of any default by the Mortgagor or other person in the observance or performance of any of the terms, covenants or provisions of the Note or this Mortgage on the part of the Mortgagor or such other person to be observed or performed without regard to whether such default constitutes or would constitute upon notice or lapse of time, or both, an Event of Default under this Mortgage. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

40.    <u>Waiver of Notice</u>.  The Mortgagor shall not be entitled to any notices of any nature whatsoever from the Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by the Mortgagee to the Mortgagor, and the Mortgagor hereby expressly waives the right to receive any notice from the Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by the Mortgagee to the Mortgagor.

41.    <u>No Oral Change</u>.  This Mortgage may only be modified, amended or changed by an agreement in writing signed by the Mortgagor and the Mortgagee, and may only be released, discharged or satisfied of record by an agreement in writing signed by the Mortgagee. No waiver of any term, covenant or provision of this Mortgage shall be effective unless given in writing by the Mortgagee and if so given by the Mortgagee shall only be effective in the specific instance in which given.  The Mortgagor acknowledges that the Note, this Mortgage, and the other documents and instruments executed and delivered in connection therewith or otherwise in connection with the loan secured hereby set forth the entire agreement and understanding of the Mortgagor and the Mortgagee with respect to the loan secured hereby and that no oral or other agreements, understanding, representation or warranties exist with respect to the loan secured hereby other than those set forth in the Note, this Mortgage and such other executed and delivered documents and instruments.

42.    <u>Trust Fund</u>.  Pursuant to Section 13 of the Lien Law of New York, the Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the cost of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

43.    <u>Non-Residential Property</u>.  This Mortgage does not cover real property principally improved by one or more structures containing in the aggregate six (6) or less residential dwelling units having their own separate cooking facilities.

44.    <u>**WAIVER OF TRIAL BY JURY**</u>.  **THE MORTGAGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE MORTGAGEE BY ITS ACCEPTANCE OF THE NOTE AND THIS MORTGAGE IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE NOTE, THIS MORTGAGE ANY OTHER DOCUMENT OR INSTRUMENT NOW OR HEREAFTER EXECUTED AND DELIVERED IN CONNECTION THEREWITH OR THE LOAN SECURED BY THIS**

MORTGAGE.

45.    WAIVER OF STATUTORY RIGHTS. THE MORTGAGOR SHALL NOT AND WILL NOT APPLY FOR OR AVAIL ITSELF OF ANY APPRAISEMENT, VALUATION, STAY, EXTENSION OR EXEMPTION LAWS, OR ANY SO-CALLED "MORATORIUM LAWS," NOW EXISTING OR HEREAFTER ENACTED, IN ORDER TO PREVENT OR HINDER THE ENFORCEMENT OR FORECLOSURE OF THIS MORTGAGE, BUT HEREBY WAIVES THE BENEFIT OF SUCH LAWS TO THE FULL EXTENT THAT THE MORTGAGOR MAY DO SO UNDER APPLICABLE LAW. THE MORTGAGOR FOR ITSELF AND ALL WHO MAY CLAIM THROUGH OR UNDER IT WAIVES ANY AND ALL RIGHT TO HAVE THE PROPERTY AND ESTATES COMPRISING THE MORTGAGED PROPERTY MARSHALLED UPON ANY FORECLOSURE OF THE LIEN OF THIS MORTGAGE AND AGREES THAT ANY COURT HAVING JURISDICTION TO FORECLOSE SUCH LIEN MAY ORDER THE MORTGAGED PROPERTY SOLD AS AN ENTIRETY. THE MORTGAGOR HEREBY WAIVES FOR ITSELF AND ALL WHO MAY CLAIM THROUGH OR UNDER IT, AND TO THE FULL EXTENT THE MORTGAGOR MAY DO SO UNDER APPLICABLE LAW, ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OF DECREE OF FORECLOSURE OF THIS MORTGAGE OR GRANTED UNDER ANY STATUTE NOW EXISTING OR HEREAFTER ENACTED.

46.    Brokerage. The Mortgagor covenants and agrees that no brokerage commission or other fee, commission or compensation is to be paid by the Mortgagee on account of the loan or other financing obligations evidenced by the Note and/or secured by this Mortgage and the Mortgagor agrees to indemnify the Mortgagee against any claims for any of the same.

47.    Enforceability. This Mortgage was negotiated in the State of New York, and made by the Mortgagor and accepted by the Mortgagee in the State of New York, and the proceeds of the loan secured hereby were disbursed from the State of New York, which State the parties agree has a substantial relationship to the parties and to the underlying transaction embodied hereby, and in all respects, including, without limiting the generality of the foregoing, matters of construction, validity and performance, this Mortgage and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and performed in such State and any applicable laws of the United State of America, except with respect to the provisions hereof which relate to the realization upon the security covered by this Mortgage, in which case such provisions shall be governed by the State in which the Mortgaged Property is located, it being understood that, to the fullest extent permitted by the law of such State, the law of the State of New York shall govern the validity and enforceability of this Mortgage, the Note, and other documents executed and delivered in connection with the Debt, and the obligations arising hereunder and thereunder. Whenever possible, each provision of this Mortgage shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Mortgage shall be unenforceable or prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such unenforceability, prohibition or invalidity, without invalidating the remaining provisions of this Mortgage.

48.    Indemnification. Anything in this Mortgage or the other Loan Documents to the contrary notwithstanding, the Mortgagor shall indemnify and hold the Mortgagee harmless and defend the Mortgagee at the Mortgagor's sole cost and expense against any loss or liability, cost or expense (including, without limitation, title insurance premiums and charges and reasonable attorneys' fees and disbursements of the Mortgagee's counsel, whether in-house staff, retained firms or otherwise), and all claims, actions, procedures and suits arising out of or \n connection with (i)

any ongoing matters arising out of the transaction contemplated hereby, the Debt, this Mortgage, the Note or any other document or instrument now or hereafter executed and/or delivered in connection with the Debt (the "Loan Documents") and/or the. Mortgaged Property, including, but not limited to, all costs of reappraisal of the mortgaged property or any part thereof, whether required by law, regulation, the Mortgagee or any governmental or quasi-governmental authority, (ii) any amendment to, or restructuring of, the Debt and this Mortgage, the Note or· any of the other Loan Documents, and (iii) any and all lawful action that may be taken by the Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, joint venturer, member or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding. All sums expended by the Mortgagee shall be payable on demand and, until reimbursed by the Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and secured hereby and shall bear interest at the Default Rate. The obligations of the Mortgagor under this paragraph shall, notwithstanding any exculpatory or other provisions of any nature whatsoever set forth in the Loan Documents, constitute the personal recourse undertakings, obligations and liabilities of the Mortgagor.

49.    Relationship. The relationship of the Mortgagee to the Mortgagor hereunder is strictly and solely that of lender and borrower and mortgagor and mortgagee and nothing contained in the Note, this Mortgage or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise in connection with the loan secured hereby is intended to create, or shall in any event or under any circumstance be construed as creating, a partnership, . joint venture, tenancy-in-common, joint tenancy or other relationship of any nature whatsoever between the Mortgagee and the Mortgagor other than as lender and borrower.

50.    Letter Agreements. The Mortgagor shall fully and faithfully observe and perform all of the terms, covenants, conditions, provisions and agreements contained in any letter agreements dated the date hereof, the terms, covenants and conditions of which are incorporated herein by this reference, and made a part hereof, with the same force and effect as if the same were fully set forth in this Mortgage.

51.    Representations and Warranties. Mortgagor represents and warrants, and covenants for so long as any. obligations secured by this Mortgage remain outstanding, as follows:

(a)    . Mortgagor does not and will not own any asset or ·property other than the Mortgaged Property and related assets and property.

(b)    Mortgagor does not and will not engage in any business other than the acquisition, ownership, management and operation of the Mortgaged Property, and Mortgagor will conduct and operate its business in all material respects as presently conducted and operated and will not change the use of the Mortgaged Property, nor may the Mortgagor undertake any development of the Mortgaged Property without the prior written consent of the Mortgagee. Mortgagee's consent shall be granted or withheld at Mortgagee's sole discretion.

(c)    Mortgagor has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (i) the Indebtedness, and (ii) trade and operational debt incurred in the ordinary course of business with trade creditors and in amounts as are customary and reasonable under the circumstances. Except with Mortgagee's prior written approval in each instance, no indebtedness other than the Indebtedness is or shall be secured by the Property. Mortgagee's approval shall be

22

granted or withheld at Mortgagee's sole discretion. In connection with any such financing approved by Mortgagee, Mortgagor shall be required to obtain and deliver to Mortgagee a subordination and standstill agreement from such mortgagee which shall be in form and substance satisfactory to Mortgagee in its sole discretion.

(d)    Mortgagor has not made and will not make any loans or advances to any third party (including any constituent party, any guarantor of the Indebtedness or any affiliate of Mortgagor, or any constituent party of any such guarantor), except in de minimis amounts in the ordinary course of business and of the character of trade or operational expenses.

(e)    Mortgagor will maintain books and records and bank accounts separate from those of its affiliates and any constituent party, and Mortgagor will file or cause to be filed separate, distinct tax returns or informational return relating only to Mortgagor.

(f)    Mortgagor is and will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate or constituent party of Mortgagor or any affiliate or constituent party of any guarantor of the Indebtedness), and will use and conduct its business in its own name.

(g)    Neither Mortgagor nor any constituent party will cause or seek the dissolution or winding up, in whole or in part, of Mortgagor.

(h)    Mortgagor will not commingle its funds and other assets with those of, or pledge its assets for the benefit of any affiliate of Mortgagor, any guarantor of the Indebtedness or any other party.

(i)    Mortgagor does not or will not hold itself out to be responsible for the debts or obligations or any other person and does not or will not pay another person's liabilities out of its own funds.

(j)    Mortgagor will not consent to the filing of any petition to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, and Mortgagor will not make an assignment for the benefit of its creditors.

52.    Appraisals; Value of Property.  Mortgagor shall permit Mortgagee to prepare or cause to be prepared, from time to time at least annually, at the sole option and discretion of the Mortgagee, appraisals of the Mortgaged Property, at Mortgagor's sole cost and expense, and Mortgagor shall fully cooperate in connection with the preparation thereof. Mortgagor covenants and agrees that to the extent Mortgagee determines in its reasonable discretion that the outstanding principal amount of the Loan exceeds seventy-five percent (75%) of the sum of the value of the Mortgaged Property plus all other property constituting collateral for the loan, then Mortgagee may, at its option, require Mortgagor to provide Mortgagee with additional collateral satisfactory to Mortgagee or reduce the principal balance of the Loan. The failure of Mortgagor to comply with Mortgagee's demand for additional collateral or a principal paydown shall constitute an Event of Default. Mortgagor shall pay Mortgagee, upon demand, for the cost of any such appraisals.

53.    Material Occurrence.  Mortgagor shall promptly notify Mortgagee of the occurrence of any event or events which may, individually or in the aggregate, have a material adverse effect upon (i) Mortgagor's or guarantor's business, assets, condition (financial or otherwise) or operations, (ii) Mortgagor's ability to carry out its obligations hereunder or (iii) the

23

Mortgaged Property. If a material, adverse change occurs in Mortgagor's or any guarantor's business, assets, condition (financial or otherwise) or operations Mortgagor shall promptly take action to remedy the same to the reasonable satisfaction of Mortgagee.

54.    Flood Insurance. If, during origination or at any time during the life of the loan it is determined that all or a portion of the improvements situated on the Mortgaged Property are located within an area designated as a Special Flood Hazard Area, the Mortgagee is compelled, as a matter of law, to ensure that flood insurance is obtained and maintained with respect to the mortgaged property. Such insurance must be in form, amount and from an issuing company acceptable to the Mortgagee, and shall name Mortgagee as mortgagee and loss payee, but in no case shall the amount of coverage be less than the minimum amount mandated by law (which is either the outstanding loan balance or the maximum limit of coverage made available under the National Flood Insurance Reform Act, whichever is less), but in no event should the amount of coverage be less than the value of the improved structure. This insurance must be maintained at the borrower's expense for the life of the loan. If Mortgagee notifies Mortgagor that the pledged collateral is in a Special Flood Hazard Area, and, Mortgagor fails to obtain or maintain insurance coverage within forty five (45) days of notification, the Mortgagee may purchase such insurance in form, amount and from an issuing company acceptable to the Mortgagee and may add the premiums to the principal balance and charge interest thereon at the rate payable on the Note.

55.    Application of Proceeds. The proceeds of any sale made and any other sums which may be held by Mortgagee as part of the Mortgaged Property, shall be applied in the following order: First; to the payment of the costs and expenses of Mortgagee in enforcing the provisions of this Mortgage and the Note or any other Loan Document and enforcing its remedies thereunder and hereunder and the costs and expenses of the sale and of any judicial proceeding wherein the sale may be made, including attorneys' fees and expenses; Second, to the payment of amounts then owing on the Note in such order as Mortgagee shall determine; Third, to the payment of any other sums secured by this Mortgage; and Fourth, to the payment of the surplus to any person entitled thereto.

56.    Government Regulation. Mortgagor shall not (i) be or become subject at any time to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control list) that prohibits or limits Mortgagee from making any advance or extension of credit to Mortgagor or from otherwise conducting business with Mortgagor, or (ii) fail to provide documentary and other evidence of Mortgagor's identity as may be requested by Mortgagee at any time to enable Mortgagee to verify Mortgagor's identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

57.    Transfer of Indebtedness. Mortgagor acknowledges that Mortgagee, at its sole cost and expense, may (i) sell or transfer interests' in the Indebtedness and Loan Documents to one or more participants or special purpose entities, (ii) pledge Mortgagee's interests in the Indebtedness and the Loan Documents as security for one or more loans obtained by Mortgagee, or (iii) sell the Indebtedness evidenced by the Note and the Loan Documents to a party who may pool the Indebtedness with a number of other loans and to have the holder of such loans grant participation therein or issue one or more classes of Mortgage-Backed, Pass-Through Certificates or other securities evidencing a beneficial interest in a rate or unrated public offering or private placement (the "Securities"). The Securities may be rated by one or more national rating agencies. Mortgagor acknowledges and agrees that Mortgagee may, at any time, at no expense to Mortgagor, sell, transfer or assign the Note, this Mortgage and the other Loan Documents, and any or all servicing rights with respect thereto, or grant participation therein or issue Securities

24

evidencing a beneficial interest in a rate or unrated public offering or private placement. In this regard, Mortgagor agrees to make available to Mortgagee all information concerning its business and operations which Mortgagee reasonably requests. Mortgagee may share such information with the investment banking firms, rating agencies, accounting firms, law firms and other third-party advisory firms involved with the Indebtedness or the Securities. Mortgagee may forward to each purchaser, transferee, assignee, servicer, participant or investor in such securities or credit rating agency rating such Securities (collectively, the "**Investor**") and each prospective Investor, all documents and information which Mortgagee now has or may hereafter acquire relating to Mortgagor and the Property, whether furnished by Mortgagor or otherwise, as Mortgagee determines necessary or desirable consistent with full disclosure for purposes of marketing and underwriting the Indebtedness. Mortgagor shall furnish and hereby consents to Mortgagee furnishing to such Investors or such prospective Investors 'any and all information concerning Mortgagor and the Property as may be requested by Mortgagee, any Investor or any prospective Investor in connection with any sale, transfer or participation interest. It is understood that the information provided by Mortgagor to Mortgagee may ultimately be incorporated into the offering documents for the Securities and thus such information may be disclosed to Investors and prospective Investors. Mortgagee and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by Mortgagor. Upon any transfer or proposed transfer contemplated above and by the Loan Documents, at Mortgagee's request and at Mortgagee's sole cost and expense, Mortgagor shall provide an estoppel certificate to the Investor or any prospective Investor in such form, substance and detail as Mortgagee may reasonably require.

58.   <u>Required Notices</u>.  (a) Mortgagor shall promptly notify Mortgagee in writing of the occurrence of any of the following:

(i)      receipt by Mortgagor of any written notice from any governmental authority or instrumentality concerning (A) compliance or lack of compliance of all or any part of the Mortgaged Property, or any business or other activity conducted thereon, with any law, ordinance, rule, regulation, order, judgment, injunction or decree or with the conditions or other requirements of any license, permit, approval or authorization (including, without limitation, notice of any violation or alleged violation of any Environmental Law, or of any threatened, proposed or actual cleanup or other protective or remedial action relating to any Hazardous Material, whether pursuant to any Environmental Law or otherwise), or (B) the status of, or need for, any license, permit, approval or authorization;

(ii)     receipt by Mortgagor of any written notice concerning compliance or lack of compliance of all or any part of the Mortgaged Property, or any business or other activity conducted thereon, with any agreement or restrictive covenant;

(iii)    receipt by Mortgagor of any written notice from any tenant leasing all or any part of the Mortgaged Property or from the holder of any lien or security interest encumbering all or any part of the Mortgaged Property concerning any default or any other material matter in respect of such lease, lien or security interest;

(iv)    receipt by Mortgagor of any written notice of any contemplated, threatened or pending condemnation or eminent domain proceeding relating to all or any part of the Mortgaged Property;

(v)     receipt by Mortgagor of any written notice concerning (A) any contemplated, threatened or pending cancellation of any insurance coverage on all or any part of the Mortgaged Property,

(B) any refusal by any insurance company to provide or continue insurance coverage on all or any part of the Mortgaged Property, or (C) any increase in the cost of premiums for any insurance coverage on all or any part of the Mortgaged Property due to the condition thereof or due to any business or activity conducted therein or thereon;

(vi)    receipt by Mortgagor of any written notice concerning commencement of any judicial or administrative proceedings by, against, or otherwise having a material effect on Mortgagor, the Mortgaged Property or any entity controlled by or under common control with Mortgagor;

(vii)    receipt by Mortgagor of any written notice concerning commencement of any action for default under the terms of any loan by any creditor of Mortgagor or any entity controlled by or under common control with Mortgagor;

(viii)    any change in the name of Mortgagor or in the location of Mortgagor's principal place of business; or

(ix)    any material change in the use of the Mortgaged Property.

(b)    Mortgagor also shall notify Mortgagee in writing upon receipt by Mortgagor of notice of any other occurrence requiring the giving of notice to Mortgagee pursuant to this Mortgage or any of the other Loan Documents. Each notice to Mortgagee pursuant to this Paragraph 54 shall be accompanied by a true, correct and complete copy of any notice received by Mortgagor which is the subject of such notice to Mortgagee.

59.    Application of Moneys by Mortgagee.  Any moneys collected or received by Mortgagee in connection with the enforcement of its rights or remedies following any Event of Default shall be applied, in such priority as Mortgagee may determine, to the payment of compensation, expenses and disbursements of the agents, contractors, attorneys and other representatives of Mortgagee, to the payment of all or any part of the Debt or for any other purpose authorized by any of the Loan Documents or by law.

60.    Assignment of Mortgage.  If at any time during the term hereof, the Mortgagor shall request an assignment of the Mortgage to an institutional investor which will result in the repayment to the Mortgagee of all sums evidenced by the Note, the Mortgagee shall deliver such assignment upon the payment by the Mortgagor to the Mortgagee of (i) a fee equal to one-half of the applicable mortgage tax which would be payable on the unpaid principal balance of the Note and (ii) the reasonable fees and expenses of its counsel in connection therewith.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage, Assignment of Leases & Rents, Security Agreement and Fixture Filing as of the day and year first above written.

Al Iman Plaza, LLC

By: _____
    Sheikh Moussa Drammeh

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF WESTCHESTER      )

On this March 13, 2014, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Sheikh Moussa Drammeh, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

[Signature Page to Mortgage, Assignment of Leases & Rents,
Security Agreement and Fixture Filing]

SEAL

ELAINE MARIE MARGIOTTA
NOTARY PUBLIC
STATE OF NEW YORK
NUMBER: 01MA6008207
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES JUNE 8, 20_14_

27

EXHIBIT A

ALL that certain plot, piece or parcel of land situate, lying and being in Bronx, County of Bronx and State of New York, consisting of:

First Choice Settlement, LLC
Issued on behalf of
*WFG National Title Insurance Company*

Title No.: *FCS16857-NY*

## SCHEDULE A

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND WITH THE BUILDINGS AND
IMPROVEMENTS HEREIN ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND
COUNTY OF BRONX COUNTY, CITY AND STATE OF NEW YORK BOUNDED AND
DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE
OF WESTCHESTER AVENUE AND THE EASTERLY SIDE OF PUGSLEY AVENUE;

RUNNING THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF PUGSLEY AVENUE
125.07 FEET TO A LINE DRAWN PARALLEL WITH AND DISTANT 125 FEET SOUTHERLY
FROM THE SOUTHERLY SIDE OF WESTCHESTER AVENUE.

THENCE EASTELY ALONG SAID LINE DRAWN PARALLEL WITH THE SOUTHERLY SIDE OF
WESTCHESTER AVENUE, 100 FEET;

THENCE NORTHERLY PARALLEL WITH THE EASTERLY SIDE OF PUGSLEY AVENUE, 125
FEET TO THE SOUTHERLY SIDE OF WESTCHESTER AVENUE ; AND

THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF WESTCHESTER AVENUE , 100
FEET TO THE POINT OF PLACE OF THE BEGINNING.

SAID PREMISES BEING KNOWN AS 2008 WESTCHESTER AVENUE, BRONX, NY 10462.

BLOCK 3805 LOT 1

**SECTION 255 TAX AFFIDAVIT**
**ASSIGNMENT OF LEASES AND RENTS**

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF WESTCHESTER      )

Sheikh Moussa Drammeh ("Deponent"), having an office at 2008 Westchester Avenue, Bronx, New York 10462, being duly sworn, deposes and says:

1.    Deponent is a member of Al Iman Plaza, LLC, a New York limited liability company, the owner in fee simple (the "Owner") of certain premises encumbered by the mortgage (the "Mortgage") described in **Exhibit A** attached hereto and made a part hereof, and is familiar with the facts set forth herein.

2.    To Deponent's best knowledge, **Woodbridge Mortgage Investment Fund 1, LLC,** a Delaware LLC (the "Bank") is the owner and holder of the Mortgage and the obligation secured thereby.

3.    The mortgage recording tax in **Exhibit A** with respect to the Mortgage has been paid.

4.    There have been no reloans or readvances under the Mortgage.

5.    The maximum, aggregate principal amount which is, or under any contingency may be, secured by the Mortgage is $1,675,000.00.

6.    That by agreement entitled Assignment of Leases and Rents, of even date herewith, Owner did assign to the Bank, as collateral security for the Mortgage, all leases described therein, which agreement is being submitted for recording simultaneously herewith in the Office of the Clerk of the County of Bronx (Division of Land Records), New York.

7.    That said Assignment of Leases and Rents herewith submitted for recording does not create or secure any new or further indebtedness other than the principal indebtedness or obligation secured by or which, under any contingency may be secured by, the above referenced Mortgage in the principal sum of $1,675,000.00.

8.    That this Affidavit is made pursuant to Section 255 of the Tax Law of the State of New York for the purpose of claiming exemption from any additional tax on the recording of said Assignment of Leases and Rents.

Sworn to before me this
March 13, 2014

NOTARY PUBLIC

**SEAL**

ELAINE MARIE MARGIOTTA
NOTARY PUBLIC
STATE OF NEW YORK
NUMBER: 01MA6008207
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES JUNE 8, 20__

## Exhibit A

    Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture filing of even date herewith made by Al Iman Plaza, LLC to Woodbridge Mortgage Investment Fund 1, LLC, a Delaware LLC in the principal amount of $1,675,000.00 to be presented for recording forthwith in the Office of the Clerk of the County of Bronx (Division of Land Records), New York on which the proper mortgage recording tax is being paid.