**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>AL IMAN PLAZA LLC,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Case No. 17-12072<br>Chapter 7 |

**MEMORANDUM OPINION AND ORDER GRANTING APPLICATION FOR**
**COMPENSATION OF BROKER FOR SALE OF REAL PROPERTY**

*A P P E A R A N C E S:*

LaMONICA HERBST & MANISCALCO, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
By:    Gary F. Herbst, Esq.
         Jordan D. Weiss, Esq.
*Attorneys for Interim Chapter 7 Trustee, Salvatore LaMonica*

GONZALEZ LAW ASSOCIATES
75 South Broadway, 4th Floor
White Plains, NY 10601
By:    Carlos Gonzalez, Esq.
*Attorney for Debtor*

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Broker's Application for Compensation for the Sale of the Real Property Located at 2008 Westchester Avenue, Bronx, New York 10462* (the "Application," ECF Doc. # 81) of Maltz Auctions, Inc. (the "Broker," or "Maltz"). The Broker also filed a Report of Sale (ECF Doc. # 79). By the Application, Maltz seeks a commission of $215,000.00. The Application is supported by the certification of Richard B. Maltz (the "Maltz Certification," ECF Doc. # 81-1). The Application is opposed by Al Iman Plaza LLC (the "Debtor"), who filed its *Opposition to Approval for Disbursement of Funds* (the "Opposition," ECF Doc. # 86). An affidavit by Isa Mamudoski ("Mamudoski"), sole owner of the Debtor, was filed in support of

the Opposition (the "Affidavit," ECF Doc. # 86-1). Salvatore LaMonica, the interim chapter 7 trustee in this case (the "Trustee"), filed his reply in further support of the Broker's Application (the "Reply," ECF Doc. # 88). Attached as Exhibit A to the Reply is the Declaration of Richard B. Maltz.

For the reasons set forth below, the Opposition is OVERRULED and the Application for compensation of $215,000 is **GRANTED**.

## I. BACKGROUND

### A. The Motion

Maltz requests entry of an order (i) approving the Application, and (ii) authorizing the Trustee to pay Maltz a commission of $215,000.00 for the sale of the real property located at 2008 Westchester Avenue, Bronx, New York 10462 (the "Property") from the buyer's premium paid by the successful bidder. (App. ¶ 8.) As set forth by the Broker, on October 11, 2017, Malz was retained by the Trustee as his broker to market and sell the Property (the "Retention Order," ECF Doc. # 31). (*Id.* ¶ 1.) On December 12, 2017, a public sale was conducted and received a high bid of $4,300,000.00 for the Property, plus a 5% buyer's premium of $215,000.00 by the successful bidder. (*Id.* ¶ 2.)

### B. The Opposition

In the Affidavit attached to the Opposition, Mamudoski claims that the sale process of the Property was tainted and that the Broker's fees should be reduced. Specifically, Mamudoski alleges that only 4 of the 20 registered bidders at the sale attended the auction, and that potential bidders were excluded from participating in the sale. (Aff. at 1.) Mamudoski further alleges that potential bidders with certified funds were frustrated when they were not able to bid for the property. (*Id.*) Mamudoski also points out that the sale was delayed on the day of the auction,

2

and that the closing was required to be within 30 days of the confirmation order dated December 21, 2017 (the "Confirmation Order," ECF Doc. # 62), but did not close until after that deadline. (*Id.* at 1–2.) Finally, Mamudoski claims that the terms of the sale were different than what he was previously told was to be the required deposit, *i.e.* that he was told that a buyer needed a 10% deposit to register, but at the sale, only 5% were collected. (*Id.* at 2.)

    **C.    The Reply**

In his Reply, the Trustee argues that the Opposition seeks to collaterally attack the Confirmation Order by claiming that the sale was tainted and that the Brokers' fees should be reduced for Mamudoski's benefit. (Reply ¶ 1.) But the Trustee explains that a collateral attack on the Confirmation Order is improper and untimely since the Confirmation Order is now a final, non-appealable order and the closing of the sale occurred on January 23, 2018. (*Id.*) The Trustee further alleges that the Objection also seeks to taint the sale process "with bald and naked self-serving accusations that have no support in fact or law." (*Id.* ¶ 2.) More specifically, addressing Mamudoski's accusations, the Trustee contends that:

    i.    None of the registered bidders left the sale: The other 21 bidders present on the day of the auction were registered bidders for another property being sold in an unrelated bankruptcy sale;
    ii.    All of the registered bidders were present at the sale and were afforded the right to bid at the sale;
    iii.    At the sale, prior to the commencement of the auction, it was announced that all parties interested in bidding must register before the sale begins in order to be allowed to bid;
    iv.    The sale being slightly delayed was within the discretion of the Trustee and was due to a bidder attempting to become a registered bidder by arranging for a deposit to be posted;
    v.    The Stalking Horse Agreement approved by the Court and the Amended Bidding Procedures (ECF Doc. # 50) required a $432,000.00 qualifying deposit, an additional deposit sufficient to augment the qualifying deposit such that the buyer deposited 10% of the sale price, and a buyer's premium deposit equal to 5% of the sale price. And in fact, all bidders were required to, and did tender a qualifying deposit of $432,000.00 (a 10% deposit) in order to bid at the sale, and not 5%; and

3

    vi.    The three-day delay in closing the sale, which occurred on January 23, 2018 rather than before 30 days after the Confirmation Order dated December 21, 2018, was due to a scheduling conflict between the Trustee and the purchaser, and in any event is not related to and has no relevance as to the Application.

(Reply ¶¶ 23–26.)

The Court concludes that it is not necessary to determine whether the Debtor's challenge to the Application is an impermissible collateral attack on the Confirmation Order. The record establishes that the auction sale was properly conducted, and under the applicable standards for reviewing compensation requests, the Application should be granted.

## II.  LEGAL STANDARD

The court may award fees to professional persons pursuant to § 330 of the United States Bankruptcy Code. 11 U.S.C. § 330. Section 330 provides in relevant part:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award . . .
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by an such person; and
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

In determining reasonable compensation, section 330 directs the court to consider:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time which the services was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

>    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Since fee applications are required under the Bankruptcy Code, courts may award fees for time spent in actually preparing a fee application "based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6).

Whether services are necessary is determined from the perspective of the time at which the services were rendered. 3 COLLIER ON BANKRUPTCY ¶ 330.04[1][b][iii] (15th ed. rev. 2007). In the Second Circuit, the "necessary" standard in § 330 is given a broad interpretation. Services are "necessary" if they benefit the estate. *In re Keene Corp.,* 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (Bernstein, J.). The test considers whether services provided were "reasonably likely to benefit the estate" and is an objective test, considering the services that a reasonable lawyer would have performed in the same circumstances. *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996).

The court has an independent duty to review fee applications and evaluate the compensation requested. *In re Keene*, 205 B.R. at 695. The court may reduce or disallow a request if the services provide no real benefit to the estate. *Id.* at 696. The court may also reduce compensation if the request is based on incomplete or inaccurate time records. *In re Hamilton Hardware Co.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981).

Fee applications must also comply with FED. R. BANKR. P. 2016, which requires "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED. R. BANKR. P. 2016. Rule 2016 requires disclosure of any payments previously made to the applicant and of the existence of any compensation agreement between

the applicant, their client and any third party who will share the compensation. *Id.* Also, S.D.N.Y. Bankruptcy Local Rule 2016-1 requires that such entities "shall comply with the requirements contained in any guidelines for fees and disbursements promulgated by the Court."

General Order M-447 requires certifications by the professional responsible for compliance with the guidelines that the fee application has been read, that the application and the fees therein comply with the guidelines and that the fees are billed at rates customary to the applicant and generally accepted by the applicant's clients. The application must also contain certifications of service of the fee application on the trustee, the debtor or the chair of each official committee. The certifications also require a list of all professionals working on a given case, aggregate hours spent by each professional, and a reasonably detailed breakdown of the disbursements incurred and an explanation of billing practices.

In the Second Circuit, fee requests may be approved when the fees incurred were "reasonably likely to benefit the estate." *In re Ames Dept. Stores, Inc.*, 76 F.3d 66 (2d Cir. 1996). The determination of whether particular fees were "reasonably likely to benefit the estate" is an objective test, considering the services that a reasonable lawyer would have performed in the same circumstances. *Id.* As noted above, the determination of reasonableness should not be made in hindsight but as of the time when the services were rendered. 3 COLLIER ON BANKRUPTCY ¶ 330.04[1][b][iii].

In this case, the Broker's retention set forth the amount of compensation payable to the Broker upon the successful sale of the Property. Retention Order at 2 ("**ORDERED,** that Maltz shall be paid a commission in the form of a buyer's premium in the amount of five percent (5%) of the gross sale price of the Real Property, which amount shall be added to the amount of the

6

sale price and payable by the purchaser of the Real Property, and in such event, no reimbursement of expenses shall be sought by Maltz . . . .").

### III.   DISCUSSION

Maltz requests a commission of $215,000.00, earned from the sale of the Debtor's Property at a public sale conducted on December 12, 2017. The Court's Retention Order authorized and approved the retention of Maltz as the Trustee's broker to market and sell the Property. Maltz was entitled to "a commission in the form of a buyer's premium in the amount of five percent (5%) of the gross sale price of the Real Property, which amount shall be added to the amount of the sale price and payable by the purchaser of the Real Property." (*See* Retention Order at 2.) As a result of Maltz's efforts, the Trustee received and accepted an offer for the sale of the Property of $4,300,000.00, plus a 5% buyer's premium in the amount of $215,000.00 by the successful bidder, which was approved by the Court on December 21, 2017. (*See* ECF Doc. # 62.) The Maltz Certification certifies compliance with the applicable rules. Maltz's commission for the sale of the Property is also reasonable given the circumstances.

The Debtor's Opposition to the disbursement of funds to Maltz "for poor work" is **OVERRULED**. First, the Debtor does not cite any relevant authority supporting its argument that poor work performed by a retained professional should lead to a deduction to that professional's allowed compensation. Rather, the Debtor refers to out of Circuit cases that merely stand for the inverse proposition, *i.e.* that courts permit bonuses to retained counsel for work well done. Further, as argued by the Trustee, the Debtor's accusation that the auction proceedings were not properly performed and lead to a lowered winning bid appear self-serving and are only based on Mamudoski's allegations asserted in his Affidavit. Particularly relevant is Mamudoski's accusation that only 4 registered bidders took part in the auction. The Trustee

explains that the additional parties that the Debtor contends were prevented from bidding on the Property were registered for bidding at a previous bankruptcy auction unrelated to the sale of the Property.  Further, attached to the Declaration of Richard B. Maltz is a transcript of the auction sale, and a review of the transcript shows that there were no irregularities during the auction.

Throughout this case, Mamudowski has done everything he could to frustrate the timely, fair and efficient disposition of this case.  This case was originally filed as a case under chapter 11, but on the motion of the United States Trustee (ECF Doc. # 6), on September 20, 2017, the case was converted to case under chapter 7.  (ECF Doc. # 16.)  Mamudowski continued in his efforts to frustrate the efficient handling of this chapter 7 case thereafter.  The fact of the matter is that the sale of the Debtor's Property was successful in maximizing the value of Debtor's estate.  The Trustee and the Broker properly arranged and conducted the successful auction of the Property.

Accordingly, Application seeking a Broker's Commission of $215,000 is **GRANTED.**

**IT IS SO ORDERED.**

Dated:   April 10, 2018
         New York, New York

                                            ____*Martin Glenn*_____
                                              MARTIN GLENN
                                  United States Bankruptcy Judge